UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 15-22377-CIV-MARTINEZ-GOODMAN**

IN RE:
BANCO SANTOS, S.A.
    Debtor in a Foreign Proceeding,

EDWARD TYLER NAHEM FINE ART, LLC
& EDWARD TYLER NAHEM,
    Appellants,
vs.

BANCO SANTOS, S.A.,
    Appellee.
_____/

## ORDER AFFIRMING BANKRUPTCY COURT'S DENIAL WITHOUT PREJUDICE OF RELIEF FROM AUTOMATIC STAY

THIS CAUSE came before the Court upon Appellants' Notice of Appeal from the Bankruptcy Court's Order on Motion for Relief from the Automatic Stay [D.E. No. 1; Doc. 117]. The appeal has been fully briefed, and the Court has carefully considered the briefs and is otherwise duly advised. [D.E. Nos. 9, 10, 14, 16]. For the reasons stated below, this Court affirms the Bankruptcy Court's Order.

### I. Background and Procedural History

Edward Tyler Nahem Fine Art, LLC (the "Gallery") and Edward Tyler Nahem ("Nahem," together with the Gallery, "Appellants") appeal from a final order of the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), [Doc. 117],[1] denying Appellants' motion to lift an automatic stay in a cross-border insolvency case, filed pursuant to Chapter 15 of the United States Bankruptcy Code.

---

[1] For the purposes of clarity, docket entries of the Bankruptcy Court in the Chapter 15 action (no. 10-47543-LMI) are referred to as "Doc. __".

A.     **The Parties**

The Gallery is a highly regarded art gallery located in New York City, New York. [D.E. No. 9 at 4]. Nahem owns the Gallery. *Id.* Banco Santos ("Appellee") is a Brazilian bank that collapsed a decade ago and continues to undergo a court-supervised liquidation in a Brazilian bankruptcy court (the "Brazilian Bankruptcy Court"). *Id.*

In December 2010, Banco Santos commenced a Chapter 15 action in a United States Bankruptcy Court. *Id.* The Bankruptcy Court issued an Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code and Granting Related Relief (the "Recognition Order"). [D.E. No. 14 at 2]. The Recognition Order recognized Banco Santos' bankruptcy proceedings in the Brazilian Bankruptcy Court as the "foreign main proceeding" under Chapter 15, and recognized Dr. Vanio Desar Pickler Aguiar ("Aguiar") as the foreign representative of Banco Santos. The Recognition Order entrusted Aguiar with the administration and realization of Banco Santos' assets within the territorial jurisdiction of the United States. The Recognition Order also provided that "[a]ll persons and entities are stayed from commencing or continuing any action or proceeding concerning the assets, rights, obligations or liabilities of Banco Santos located in the United States." Appellants seek relief from this provision of the Recognition Order, so that they may bring a lawsuit against Appellee in New York State court. *Id.*

B.     **The Gallery's Purchase of Four Paintings**

On January 30, 2006, the Gallery purchased four paintings for $1.48 million from A.M. Barral Fine Art Advisory, LLC ("Barral Fine Art"), a fine art dealership in New York City that is owned by Alberto Barral ("Barral"). The paintings included (1) *Sea Strip* by Helen Frankethaler ("*Sea Strip*"); (2) *Untitled* by Cy Twombly ("*Untitled*"); (3) *Switch (Salvage)* by Robert

Rauschenberg ("*Switch*"); and (4) *Jaune Avec Trous* by Miguel Barcelo ("*Jaune Avec Trous*") (collectively "Works of Art"). [D.E. No. 9 at 4–5].

Prior to purchasing the Works of Art, the Gallery completed its own due diligence with respect to the Works of Art, which indicated that no known liens existed and that there were no competing claims against any of them. *Id.* at 5 n. 4. Further, in the Purchase and Sales Agreement, pursuant to which the Gallery purchased the Works of Art, Barral Fine Art represented to the Gallery that it had good and marketable title to sell the Works of Art to the Gallery and that no known or potential claims existed against the Works of Art. *Id.* at 5. Barral Fine Art also provided the Gallery with warranties as to the integrity of the Works of Art's chain of custody, and noted the absence of any violations of any country's laws in connection with the sale. *Id.* Lastly, Barral Fine Art agreed to indemnify the Gallery, in full, for any lawsuits or other claims relating to any breach or alleged breach of the representation, warranties, or agreements contained in the Purchase and Sales Agreement. *Id.* at 6.

After purchasing the Works of Art in January 2006, the Gallery sold three of the paintings—*Sea Strip*, *Untitled*, and *Switch*—to customers later that year. *Id.* During May 2007, the Gallery cosigned the fourth painting, *Jaune Avec Trous*, to Sotheby's UK in London for sale at public auction scheduled in 2007; however, the painting did not sell, and Sotheby's UK held the painting for inclusion in a future public auction. *Id.*

### C.   The Brazilian Criminal Court's Sequestration Order

On or around March 2008, Sotheby's UK notified the Gallery that Scotland Yard had requested Sotheby's UK to hold *Jaune Avec Trous* at the request of the Brazilian authorities. *Id.* In response, during May 2008, the Gallery commenced a "precautionary measure" proceeding in the Brazilian Bankruptcy Court to investigate the reasons for Banco Santos' alleged claim to

*Jaune Avec Trous*. *Id.* During the precautionary measure proceedings, the Gallery learned that, on April 11, 2006, a Brazilian criminal court entered a "Sequestration Order"[2] in a separate criminal proceeding (the "Main Criminal Proceeding") pending in Brazil against Edemar Cid Ferreira ("Ferreira"), the former president of Banco Santos, and other defendants.[3] *Id.* at 6–7. The Sequestration Order mentioned three of the four Works of Art, including *Jaune Avec Trous*, *Untitled*, and *Switch*, but it did not mention *Sea Strip*.

In its precautionary measure proceedings, the Gallery sought to obtain a preliminary injunction to suspend the enforcement of the Sequestration Order, pending the Gallery filing a separate main proceeding in the Brazilian Bankruptcy Court to demonstrate that the Sequestration Order should not apply at all to *Jaune Avec Trous*. Moreover, if the Brazilian Bankruptcy Court granted the preliminary injunction, the Gallery requested that the Brazilian Bankruptcy Court issue official letters to the relevant Brazilian authorities to reaffirm that all measures would be taken by the authorities to prevent the seizure of *Jaune Avec Trous*. Finally, the Gallery sought to obtain production of all documents filed in the Main Criminal Proceeding related to the Sequestration Order, which, at that time, were under seal. *Id.* at 7.

On July 10, 2008, the Brazilian Bankruptcy Court denied the Gallery's requests. *Id.*; *see* [D.E. No. 14 at 7]. The Gallery appealed the Brazilian Bankruptcy Court's decision, and the Justice Tribunal for the State of São Paulo ("SP Appellate Court") affirmed, holding that enjoining the Sequestration Order would encroach upon the jurisdiction of the Federal Criminal Court. [D.E. No. 14 at 7]; *see* [D.E. No. 9 at 7]. Despite various suggestions of further legal recourse that the Gallery could pursue in Brazilian courts, the Gallery took no other subsequent action in Brazil. [D.E. No. 14 at 7]; [D.E. No. 9 at 7].

---

[2] A Sequestration Order is analogous to a preliminary injunction order. *Id.* at 7.
[3] Ferreira and the other defendants are not parties to this lawsuit. *Id.*

Meanwhile, on December 11, 2006, the Brazilian criminal court in the Main Criminal Proceeding issued a 660+ page decision ("December 2006 Order"), which Appellants allege superseded the April 2006 Sequestration Order. [D.E. No. 9 at 7]. Ferreira and the other defendants appealed the December 2006 Order. *Id.* At the May 27, 2015 status conference in the instant bankruptcy action, Appellants informed the Bankruptcy Court that a Brazilian appellate court held that the December 2006 Order was null and void and remanded the matter back to the Brazilian criminal court. *Id.* at 8. In response to the Bankruptcy Court's questioning, both Appellants and Banco Santos indicated that they did not know or have a view of what impact the reversal of the December 2006 Order would have on the Sequestration Order. *Id.*

### D. Banco Santos' Lawsuit Against the Gallery in Sweden

On October 8, 2013, Banco Santos commenced a lawsuit against the Gallery in a Solna District Court in Sweden to obtain title to, and possession of, *Switch* (the "Swedish Lawsuit"). *Id.* at 9. The Swedish court denied Banco Santos' request for provisional sequestration. *Id.* The Swedish appellate court affirmed the denial of Banco Santos' request. Subsequently, both an intermediate appellate court and the Swedish Supreme Court denied Banco Santos' request to appeal, and Banco Santos abandoned the Swedish Lawsuit. *Id.* at 9–10.

### E. Appellants' Motion to Lift the Automatic Stay

On January 21, 2015, Appellants filed both (1) the Motion to lift the automatic stay (the "Motion"), in order to commence their proposed New York State court action against Banco Santos; and (2) the Declaration of John R. Cahill. *Id.* at 10.

On March 5, 2015, the Bankruptcy Court ordered the parties to submit supplemental pleadings setting forth (1) any potential causes of action that Banco Santos might possibly have against the Gallery under Brazilian law and any Brazilian statutes of limitation, and (2) the

current legal status in Brazil of the Sequestration Order. *Id.* at 11. In consideration of the Motion, the Bankruptcy Court held a hearing on February 17, 2015, and a status conference on May 27, 2015. The Bankruptcy Court also discussed the Motion at another unrelated hearing held on April 21, 2015. *Id.*

At the May 27, 2015 status conference, the Bankruptcy Court rendered an oral ruling (the "Oral Ruling") denying the Motion. *Id.* The Bankruptcy Court concluded that Banco Santos no longer required the protection of the automatic stay provision, with respect to the issue of title to the Works of Art, because Banco Santos had initiated the Swedish Lawsuit against the Gallery to obtain ownership of one of the Works of Art. *Id.* at 11–12. However, the Bankruptcy Court also determined that both the "probability of success" on the merits and the "balance of the hardships" favored Banco Santos because the Gallery made "absolutely no showing" that there was anything a court in the United States could do with respect to affirming that the Gallery obtained good title to the Works of Art in January 2006. *Id.* at 12. With respect to *Sea Strip*, which was not named in the Sequestration Order, the Bankruptcy Court held that it would not consider granting stay relief until Banco Santos unilaterally decided whether to pursue a cause of action under Brazilian law against the Gallery. On June 11, 2015, the Bankruptcy Court issued its written order finalizing the Oral Ruling. *Id.*

## II. Legal Standard

This Court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Feingold*, 730 F.3d 1268, 1272 n.2 (11th Cir. 2013). However, this Court may only reverse a bankruptcy court's decision on a lift stay motion upon a showing of abuse of discretion, as a decision to lift an automatic stay is discretionary with a bankruptcy judge. *Id.*

An automatic stay may be lifted upon a showing of "cause." 11 U.S.C. § 362(d)(1). Section 362(d)(1) does not define cause, and as such, there is no set of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) "cause" exists. *In re Feingold*, 730 F.3d at 1277. However, bankruptcy courts typically use a "totality of circumstances" approach to determine whether cause existed, including a variety of case-specific factors. *Id.* For example, bankruptcy courts have looked to the following relevant considerations when determining whether cause existed: (1) the prejudice to the debtor and the hardship to the moving party if the stay remains in effect; (2) the efficient use of judicial resources, the location of witnesses, documents, and other necessary parties; and (3) whether an interested party has a probability of success on the merits of his case if the stay is lifted. *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001).

### III. Analysis

Appellants argue that the Bankruptcy Court erred in failing to rule that "cause" exists to lift the automatic stay under 11 U.S.C. § 362(d). [D.E. No. 9 at 13]. First, Appellants contend that, in the Oral Ruling, the Bankruptcy Court ruled that Banco Santos will suffer no prejudice if the automatic stay is lifted. *Id.* at 14. Specifically, Appellants cite to the following statement made by the Bankruptcy Court during the May 27, 2015, status conference:

> I think that your argument, that [Banco Santos] doesn't need the protections of the automatic stay anymore is true, in terms of the determination of the asset—the rights of the *res*, the for [Works of Art]. There is no question, I mean, like you said, [Banco Santos] sued in [Sweden], so [Banco Santos] is ready to rumble; right?

[Doc. 114 at 48:23–49:4]; [D.E. No. 9 at 14].

In response, Appellee argues that the Bankruptcy Court did not rule that Banco Santos would suffer no prejudice if the automatic stay was lifted. [D.E. 14 at 15]. Rather, Appellee

argues that the Bankruptcy Court only agreed with Appellants' narrower argument that Appellee no longer required the "breathing spell" afforded by the automatic stay because Appellee had filed a cause of action against the Gallery in Sweden. [Doc. 114 at 40:13–40:21; 48:23–48:25; 49:1–49:5]; [D.E. No. 14 at 15–16]. In fact, the Bankruptcy Court stated that if the stay was lifted, Appellants' proposed New York State court action would amount to a "colossal waste of time and money" for both parties because the cloud on the title to at least three of the Works of Art flowing from the Sequestration Order could not be cleared in such an action. [Doc. 114 at 50:2–50:5]; [D.E. No. 14 at 16].

Second, Appellants argue that the Bankruptcy Court committed reversible error in holding that the Gallery has absolutely no "probability of success" in its proposed New York State court action. [D.E. No. 9 at 15]. Without citing a single binding case from the Eleventh Circuit, Appellants contend that "[i]t is the law in this Circuit and elsewhere that the threshold showing required by the Gallery to demonstrate some probability of success on the merits in the proposed [New York] State Court Proceeding is exceedingly low." *Id.* at 15 (emphasis in original). In support of their argument, Appellants assert that they demonstrated a *prima facie* showing of some probability of success on the merits in the State Court Proceeding. *Id.* at 16.

Appellants also assert that they satisfied a *prima facie* showing that it is not frivolous to claim that New York law will apply in a dispute over title to the Works of Art because New York courts apply an interest analysis that examines the contacts each jurisdiction has with the events giving rise to the cause of action. *Id.* at 17–18. As such, Appellants state that New York has several contacts with the events giving rise to their cause of action in this case. *Id.* at 18. Primarily, Appellants argue that the Gallery, which is located in New York, purchased the Works of Art from a New York art dealer pursuant to a Purchase and Sales Agreement, which is

governed by New York law. *Id.* Additionally, Appellants argue that they made a *prima facie* showing that the Gallery has some probability of success on the merits in a declaratory action reaffirming that the Gallery obtained good title to the Works of Art when it purchased them in January 2006, because the Gallery observed reasonable commercial standards of fair dealing and due diligence when purchasing the Works of Art. *Id.* at 18–19.

To all of the preceding arguments, Appellee responds that New York state law issues would not predominate in a dispute between the Gallery and Banco Santos, because Banco Santos was not a party to the agreement to purchase the Works of Art in New York, and Appellants do not claim or otherwise show that Banco Santos claims rights to the Works of Art under New York law. [D.E. No. 14 at 20]. Further, Appellee argues that, even if this Court finds that the burden of showing a probability of success weighs in Appellants' favor, the prejudice and hardship to the parties, efficient use of judicial resources, and location of witnesses, documents, and other necessary parties factors outweigh any probability of success. *Id.* at 24.

Lastly, Appellants argue that the Bankruptcy Court committed reversible error in holding that the "balancing of the hardships" factor favored Banco Santos based upon the Sequestration Order. [D.E. No. 9 at 22]. However, as Appellee correctly indicates, the Bankruptcy Court specifically discussed its reasoning for weighing the balancing of the hardship factor in favor of the Appellee. [Doc. 114 at 50:2–50:16]. The Bankruptcy Court stated that the Appellants' proposed New York State court action is a "futile act" and a "colossal waste of time and money" because there is no United States court, especially not a New York state court, that can remove the cloud surrounding the Works of Art. [Doc. 114 at 50:4–50:5, 50:17–50:22].

Although the circumstances of this case may present a novel situation, Appellants do not meet the heavy burden to show that the Bankruptcy Court abused its discretion in denying their

Motion. This Court is not persuaded that the Bankruptcy Court, after conducting multiple hearings and reviewing the parties' supplemental filings, abused its discretion in determining that no cause existed to lift the stay based upon the specific factual circumstances in this case. *See In re Feingold*, 730 F.3d at 1277. Specifically, the Bankruptcy Court reasonably considered what it perceived to be the relevant case-specific factors here—the balancing of hardships, use of judicial resources, and the Appellants' unlikely probability of success on the merits of their proposed New York State court case—in concluding that the stay should not be lifted at this time. Accordingly, for the reasons stated above, it is:

**ORDERED AND ADJUDGED** that

The United States Bankruptcy Court for the Southern District of Florida's Order on Motion for Relief from the Automatic Stay [Doc. 117] is **AFFIRMED**. This Clerk is directed to **DENY ALL PENDING MOTIONS AS MOOT**, and **CLOSE** this case.

DONE AND ORDERED in Chambers at Miami, Florida, this 28 day of March, 2016.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record