UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

BANCO SANTOS, S.A.                                    Case No. 10-47543-BKC-LMI

      Debtor in a Foreign Proceeding.            Chapter 15
_____/

**MOTION FOR ENTRY OF AN ORDER (A) CONDITIONALLY APPROVING
COMPETITIVE BID AND SALE PROCEDURES; (B) AUTHORIZING
THE SALE OF CERTAIN ARTWORK FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES, AND INTERESTS; (C) APPROVING NOTIFICATION
PROCEDURES; (D) SETTING OBJECTION DEADLINES AND FINAL HEARING**

ADJUD Administradores Judiciais LTDA. – EPP ("Judicial Administrator"), as court-appointed Judicial Administrator for the bankruptcy estate of Banco Santos, S.A. and its Affiliates (collectively, the "Banco Santos Estate"), through their undersigned counsel, file this motion requesting: (a) pursuant to 11 U.S.C. §§ 363(b) and (f) and Rule 6004 of the Federal Rules of Bankruptcy Procedure, conditional approval to sell, through competitive bidding auctions, certain artwork belonging to the Banco Santos Estate free and clear of all liens, claims, encumbrances and interests (the "Sales"); (b) approval of the proposed method for the Judicial Administrator to notify creditors and other parties in interest of the approval of the Sales of the Property, as defined below; (c) approval of the Sales Agreements, as defined below; (d) setting a notice and objection period and a final hearing (the "Final Hearing") to consider final approval (the "Motion"), and in support states as follows:

     **I.**     **JURISDICTION AND FACTUAL BACKGROUND**

1.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

***The Brazilian Bankruptcy and Criminal Proceedings***

2.      In November 2004, the Central Bank of Brazil intervened into the affairs of Banco Santos, S.A. ("Banco Santos") and, on September 20, 2005, Judge Oliveira of the 2nd Bankruptcy and Judicial Reorganization Court of São Paulo (the "Brazilian Bankruptcy Court") ordered Banco Santos into a court-supervised liquidation (the "Brazil Bankruptcy Case") and Dr. Vânio Cesar Pickler Aguiar was appointed as Judicial Administrator of the Estate of Banco Santos (the "Banco Santos Estate" or "Estate").

3.      On May 14, 2015, Dr. Vânio Cesar Pickler Aguiar, a partner of ADJUD Administradores Judiciais LTDA. – EPP, was replaced by ADJUD Administradores Judiciais LTDA. – EPP as Judicial Administrator of the Banco Santos Estate.

4.      Dr. Vânio Cesar Pickler Aguiar and ADJUD Administradores Judiciais LTDA. – EPP are the only two Judicial Administrators that have acted in this capacity for the Banco Santos Estate.

5.      The Brazilian criminal authorities brought criminal charges and prosecuted a criminal case against the principal of Banco Santos at the time of its collapse, Edemar Cid Ferreira, certain of his family members, and other defendants, and requested legal assistance from the United States in connection with efforts to forfeit certain Ferreira-linked assets bought with proceeds of his crimes, including certain works of art.

6.      The United States of America seized and/or forfeited certain Ferreira-linked assets in the United States based on the Brazilian request for legal assistance and/or based on independent violations of U.S. law and whereas the United States of America issued its own request for mutual legal assistance in connection with the Ferreira-linked assets, including to the authorities of the United Kingdom.

2

7.      The Judicial Administrator has entered into a court-approved cooperation arrangement with the Brazilian criminal authorities to pursue and recover the proceeds of Ferreira's crimes outside of Brazil to which the Banco Santos Estate has asserted claims, including, among other works of art, the Works of Art, for the benefit of Banco Santos Estate's creditors.

***The U.S. Chapter 15 Proceedings***

8.      On December 9, 2010, the Judicial Administrator filed a petition under Chapter 15 of the United States Bankruptcy Code [D.E. 1, 2] in the United States Bankruptcy Court for the Southern District of Florida ("U.S. Bankruptcy Court").

9.      On January 13, 2011, the U.S. Bankruptcy Court entered an order recognizing the Brazil Bankruptcy Case of Banco Santos and certain affiliates as a foreign main proceeding, Case No. 10-bk-47543-LMI ("Chapter 15 Case") [D.E. 9].

10.      On April 28, 2015, the recognition order of the U.S. Bankruptcy Court was amended to include recognition of the extended Brazilian Banco Santos Bankruptcy to include, Broadening Info Enterprises, Inc., Bokara Corporation, and Wailea Corporation as debtors [D.E. 103].

***The Property to be Auctioned at the Proposed Sales***

11.      The Judicial Administrator proposes to sell a collection of over ninety-three (93) pieces of artwork (paintings, photographs, maps, autographed artwork, sculptures, scrolls, and letters) belonging to the Banco Santos Estate (the "Property").  The Property was obtained from the U.S. Government pursuant to a stipulation approved by the United States District Court for the Southern District of New York (the "Stipulation").  *See* the Stipulation attached as **Exhibit "A"**. The Stipulation approved an agreement related to a mutual legal assistance treaty request from the Brazilian criminal authorities with whom the Judicial Administrator has a cooperation agreement

3

to the U.S. authorities, which led to the seizure of the artwork several years ago. The court-approved Stipulation resulted in turnover of the Property to the Judicial Administrator to sell for the benefit of the Estate and its creditors.

12.    The Property will be sold through competitive bidding auctions by Sotheby's ("Sotheby's") and Heritage Auctions ("Heritage") (collectively, the "Brokers").[1]

13.    Sotheby's will sell twenty-four (24) pieces of the Property and charge no commission to the Estate, but will charge a customary buyer's premium to prospective purchasers (the "Sotheby's Agreement"). *See* the Sotheby's Agreement attached as **Exhibit "B"**.

14.    Heritage will sell sixty-nine (69) pieces of the Property and charge no commission to the Estate, but will charge a customary buyer's premium to prospective purchasers, which encompasses all fees, costs, insurance, photographing, and cataloguing[2] (the "Heritage Agreement"). *See* the Heritage Agreement attached as **Exhibit "C"** (collectively, the Sotheby's Agreement and the Heritage Agreement shall be referred to as the "Sales Agreements").

15.    The Brokers will accept bids from the public for the Property listed for auction until the Brokers receive the highest and best bid available. If the agreed upon reserve price for each piece of Property is met, then it will qualify as the final auction Sales price for that piece of Property ("Sales Price").

16.    Since the Sales are subject to competitive bidding, the ultimate purchaser is unknown at this time. The Judicial Administrator provides the warranties that the successful bidder

---

[1]    The Judicial Administrator is not required to file an application to employ a broker, including Heritage and Sotheby's, under section 327 in this Chapter 15 proceeding. *See* 11 U.S.C. § 103(a).

[2]    Initially, Heritage proposed to charge the Estate a 20% seller's commission, but later waived this fee.

4

will receive the Property free and clear of all liens, claims, encumbrances, and interests after the Sale.

17.     For each of the Sales, the minimum qualified bid and minimum incremental bid will vary based on the piece of Property and auction.

18.     There are no known documentation requirements for competing bidders or purchasers.

19.     There are no known lienholders for the Property.

***The Status of the Brazilian Bankruptcy Court Approval***

20.     On March 13, 2018, the Judicial Administrator filed a motion seeking approval of the Sales and bid procedures related to the Sotheby's Agreement from the Brazilian Bankruptcy Court (the "Brazilian Sotheby's Approval Motion").  *See* attached as **Exhibit "D"**.

21.      After receiving no objection from any creditors of the Estate, on March 22, 2018, the Brazilian Bankruptcy Court entered an Order: (i) approving the Sotheby's Agreement, bid procedures, and Sales through Sotheby's to sell the twenty-four (24) pieces of Property procedures through competitive bidding auctions, which in the Judicial Administrator's business judgment will produce the highest and best offers; (ii) ordering the Judicial Administrator to find a professional to sell the additional sixty-nine (69) pieces of Property; and (iii) ordering notification by publication in the Official Gazette (*Diário Oficial*) of the Order. (the "Brazilian Sotheby's Approval Order").  *See* attached as **Exhibit "E"**.

22.     On July 13, 2018, the Judicial Administrator filed a motion seeking approval for Heritage to sell the remaining sixty-nine (69) pieces of Property and requesting entry of an Order (the "Brazilian Heritage Approval Order"): (i) approving the Heritage Agreement and Sales procedures through competitive bidding auctions, which in the Judicial Administrator's business

5

judgment will produce the highest and best offers; (ii) ordering notification by publication in the Official Gazette (*Diário Oficial*) of the Brazilian Bankruptcy Court's Order (the "<u>Brazilian Heritage Approval Motion</u>"). *See* attached as **<u>Exhibit "F"</u>**.

23.    On August 10, 2018, the Brazilian Bankruptcy Court granted the Brazilian Heritage Motion and authorized the Heritage Agreement (the "<u>Brazilian Heritage Approval Order</u>"). *See* attached as **<u>Exhibit "G"</u>**.

24.    The Judicial Administrator intends to seek from the Brazilian Bankruptcy Court a further order that will: (i) order notification by publication in the Official Gazette (*Diário Oficial*) of the U.S. Approval Order sought through this Motion; and (ii) direct all parties in interest to file objections with this Court as to the U.S. Approval Order or Sales Prices within the time set forth by this Court (the "<u>Final Brazilian Approval Order</u>").

## II.    RELIEF REQUESTED

25.    Through this Motion, the Judicial Administrator requests that the Court enter an Order (the "<u>U.S. Approval Order</u>"): (i) approving the Sales free and clear of all liens, claims, encumbrances and interests through the competitive bidding auctions, which in the Judicial Administrator's business judgment will produce the highest and best offers; (ii) authorizing the Sales Agreements; (iii) approving the form and means of notice of the Sales of the Property to the creditors and parties in interest of the Banco Santos Estate by publication in the Official Gazette (*Diário Oficial*); (iv) setting an objection period of twenty-one (21) days after notice is published in which parties in interest may file with this Court any objection to the U.S. Approval Order and the Sales; and (vi) scheduling the Final Hearing.

6

### III.    BASIS FOR THE REQUESTED RELIEF

26.    This Court has the statutory authority to authorize the Sales of the Property free and clear of all liens outside the ordinary course of business.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

27.    Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that transactions should be approved under section 363(b)(1) when: (a) interested parties are provided with adequate and reasonable notice; (b) the sale is supported by a sound business purpose; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith.  *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991).

28.    Courts have determined that in a Chapter 15 case a "transfer of an interest of the debtor in property within the territorial jurisdiction of the United States" within the meaning of 11 U.S.C. § 1520(a)(2) requires the bankruptcy court to conduct a section 363 review through the standard applied in Chapter 11 cases.  *See In re Fairfield Sentry Ltd.*, 768 F.3d 239, 246 (2d Cir. 2014); *see also In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547 (E.D. Va. 2010).

29.    In this case, the Sales through competitive bidding auctions is the best way to preserve, maximize, and realize the value of the Property for the benefit of the Banco Santos Estate, its creditors, and other parties in interest.  The Property consists of artwork that would be best sold through the Brokers, which specialize in the sale of artwork. The Sales via auction will necessarily produce the fair market value of the Property through competitive bidding, and will also minimize the administrative burden on the Estate. Accordingly, the Judicial Administrator submits that the proposed Auction Agreement terms for the Sales of the Property are fair and reasonable.

SEQUOR LAW, P.A.

30.     Under Brazilian law, publication in the Official Gazette (*Diário Oficial*) is the appropriate and required means of providing notice to the Banco Santos Estate's creditors and other interested parties.  Under section 1514(b) of the Bankruptcy Code, "notification to creditors with foreign addresses … shall be given individually, unless the court considers that, under the circumstances, some other form of notification would be more appropriate." International mailing to creditors would require the Estate to incur costs of approximately $10,000 per mailing, which would be burdensome on the Estate, especially concerning Sales that may produce Sales Prices in a lower amount than the cost of mailing. The Judicial Administrator requests that this Court determine that providing notice to Brazilian creditors and interested parties through the proper method required in Brazil via publication in the Official Gazette (*Diário Oficial*) is appropriate under the circumstances.

31.     Therefore, the Judicial Administrator requests that the publication in the Official Gazette (*Diário Oficial*) of the U.S. Approval Order should be deemed appropriate notice to the Estate's creditors of the Motion and the U.S. Approval Order.  Likewise, publication in the Official Gazette (*Diário Oficial*) of the U.S. Approval Order, the Brazilian Sotheby's Approval Order, the Brazilian Heritage Approval Order, and all subsequent reports by the Judicial Administrator containing all material information about the Sales and the purchasers of the Property made to the Brazilian Bankruptcy Court ("Sale Reports") should be deemed appropriate notice to the Estate's creditors of the Sales of the Property.

32.     The Judicial Administrator requests that the prospective successful bidders at the auction Sales are deemed good faith purchasers entitled to the protections of 11 U.S.C. § 363(m), as appropriate based on the representations in the Sale Reports.

8

33. The Judicial Administrator requests that this Court, as part of the U.S. Approval Order, set a twenty-one (21) day objection period after publication of notice by which any creditor, party in interest, or any other person may file any written objection to the U.S. Approval Order or the Sales with this Court.

34. If no objection to the U.S. Approval Order is filed within twenty-one (21) days of the publication of notice of same, then the Judicial Administrator requests that this Court deem the approval of the auction bid procedures for the Property and the Sales Agreements approved on a final basis without the need for any further Order of the Court after the conclusion of the Final Hearing.

35. Likewise, if no objection to the Sales are filed within twenty-one (21) days of the publication of notice of the Sale Reports, then the Judicial Administrator requests that this Court deem the Sales approved on a final basis without the need for any further Order of the Court after the conclusion of the Final Hearing.

## IV.    CONCLUSION AND PRAYER

WHEREFORE, the Judicial Administrator respectfully requests that this Court enter the proposed U.S. Approval Order attached as **Exhibit "H"**: (a) conditionally approving the bidding and auction procedures for the Sales of the Property free and clear of all liens, claims, encumbrances, and interests; (b) approving the Sales Agreements; (c) approving the proposed form and manner in which notice of the U.S Approval Order and Sales shall be given to all parties in interest through publication in the Official Gazette (*Diário Oficial*); (d) setting an objection period of twenty-one (21) days after publication by which written objections to U.S. Approval Order or Sales must be filed; (e) scheduling the Final Hearing to hear any objection and consider final approval of the Motion; (f) deeming that the prospective successful bidders are good faith

9

purchasers entitled to the protections of 11 U.S.C. § 363(m); (g) retaining jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of the U.S. Approval Order; and (h) granting such other and further relief as the Court deems just and proper.

Dated: August 14, 2018

Respectfully submitted,

SEQUOR LAW, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida  33131
Phone:  (305) 372-8282
Facsimile:  (305) 372-8202

By:    /s/ Amanda E. Finley
Edward H. Davis, Jr.
Fla. Bar No. 704539
edavis@sequorlaw.com
Arnoldo B. Lacayo
Fla. Bar No. 675482
alacayo@sequorlaw.com
Amanda E. Finley
Fla. Bar No. 100225
afinley@sequorlaw.com

*Attorneys for Banco Santos Estate and its Affiliates*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and sent via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case, via regular US mail to all parties who are not on the list to receive e-mail notice/service as indicated on the service list attached, and through the manner of notice explained in the Motion for all foreign creditors in this case.

By:    /s/ Amanda E. Finley
Amanda E. Finley

10

## **SERVICE LIST**

## **Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Samuel J Capuano    scapuano@aspalaw.com, 2526271420@filings.docketbird.com
- Edward H. Davis    edavis@sequorlaw.com, tcrockett@sequorlaw.com
- Gary M Freedman    gary.freedman@nelsonmullins.com, yari.portanova@nelsonmullins.com;lisa.negron@nelsonmullins.com
- David L Gay    dgay@bergersingerman.com, efile@bergersingerman.com;efile@ecf.inforuptcy.com;mvega@bergersingerman.com
- Gregory S Grossman    ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- Arnoldo B Lacayo    alacayo@sequorlaw.com, afalcon@sequorlaw.com
- Miami-Dade County Tax Collector (Windley)    mdtcbkc@miamidade.gov
- Nyana A Miller    nmiller@sequorlaw.com, afalcon@sequorlaw.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Andrea L Rigali    andrea@youroam.com

## **Manual Notice List**

The following is the list of **parties** who receive via US Mail

John R. Cahill
70 West 40th St
New York, NY 10018

Mark T. Power
488 Madison Avenue
New York, NY 10022

Paul A Winick
70 West 40th St
New York, NY 10018

SEQUOR LAW, P.A.